UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| SIXELA INVESTMENT GROUP | CIVIL ACTION NO. 23-0277 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| HOPE FEDERAL CREDIT UNION, ET AL. | MAGISTRATE JUDGE WHITEHURST |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by Defendant Hope Federal Credit Union ("Hope"). See Record Documents 147, 148 & 161. Plaintiff Sixela Investment Group ("SIG") opposed. See Record Documents 187 & 188. Hope replied. See Record Document 194. For the reasons stated below, Hope's Motion for Summary Judgment (Record Document 147) is **GRANTED**. All claims asserted by SIG against Hope are **DISMISSED WITH PREJUDICE**.

**BACKGROUND**

SIG filed the instant suit against Defendants Hope Federal Credit Union ("Hope") and CU. See Record Document 25. SIG claims that Hope violated the Equal Credit Opportunity Act ("ECOA") by denying, on the basis of race, its request for a commercial loan to build a grocery store in New Iberia, Louisiana. See Record Document 147-1 at 5. SIG asserts that CU breached its alleged contract with SIG by sharing "incomplete projections" with Hope, which led to the denial of SIG's loan application. See Record Document 137-12 at 4.

SIG alleges that Hope's mortgage lending-related policies and practices constitute discrimination against applicants on the basis of race, sex, or national origin in violation of the ECOA. See Record Document 25 at ¶ 25. SIG contends that Hope's policies and practices constitute a pattern or practice of discrimination, discouragement, and resistance to the full enjoyment of rights secured by the ECOA. See id. at ¶ 26. Additionally, SIG claims that CU consultant Brian Wells ("Wells") and his consultant friend, Shawn Park ("Park"), were forced upon SIG members by Hope Commercial Loan Officer Larry Dents ("Dents"). See id. at ¶ 5. SIG submits that CU entered into a contract with SIG to provide projections as requested by a Hope representative. See id. at ¶ 8. However, SIG alleges that CU's analysis was not conducted in a manner consistent with others in their field, and it provided erroneous information to Hope with SIG's permission, thereby causing the loan to be denied. See id. Due to Hope's policies and practices, as well as CU's breach of contract, SIG asserts it has suffered economic losses and demands $8,000,000.00. See id. at ¶ 30.

## LAW AND ANALYSIS

**I. Summary Judgment Standard.**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). When reviewing a motion for summary judgment, the court must view "all facts and inferences in the light most favorable to the non-moving party." Romero v. City of Grapevine, Tex., 888 F. 3d 170, 175 (5th Cir. 2018).

"Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion." Lucero v. General Motors LLC, No. 21-02893, 2022 WL 16578415, at *2 (S.D. Tex. Nov. 1, 2022). "The non-movant then must provide specific facts showing there is a genuine dispute." Id. The non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a 'scintilla of evidence.'" Hathaway v. Bazanay, 507 F. 3d 312, 319 (5th Cir. 2007).

"It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. See Lucero, 2022 WL 16578415, at *2 (citing Malacara v. Garber, 353 F. 3d 393, 405 (5th Cir. 2003)). "It is not the duty of the Court to search the record for evidence that might establish an issue of material fact." Id. See LeBlanc v. DISA Global Solutions, Inc., No. 17-76, 2020 WL 8363123, at *2 (M.D. La. Feb. 19, 2020). Specifically, Local Rule 56.2 in the Western District of Louisiana provides, "A memorandum in opposition to a motion for summary judgment must contain: (1) The material facts that the opponent contends are genuinely disputed; and (2) A pinpoint reference to the document or other exhibit establishing that each such fact is genuinely disputed." LR56.2.

**II. ECOA.**

The ECOA "was legislated in response to creditor's unequal treatment towards women, minorities, and elderly persons." Jones v. Caliber Home Loans, Inc., No. 18-1023, 2019 WL 3366104, at *4 (M.D. La. July 25, 2019). The ECOA provides that "it is 'unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction…on the basis of race.'" Id. A violation of the ECOA "occurs upon the

3

happening of an adverse action by the creditor, i.e., the denial of a loan application." Curley v. JP Morgan Chase Bank NA, No. 05-1304, 2007 WL 1343793, at *4 (W.D. La. May 7, 2007). "[W]ithin thirty days of receipt of a completed application for credit, the creditor must advise the applicant of an adverse action on the application." Id. "This can be accomplished by providing the applicant with a written statement of reasons for the adverse action or by notifying the applicant of the action and their right to receive a written statement of reasons for the adverse action." Id.

To state a claim for relief under the ECOA, a plaintiff's complaint "'must plausibly allege that (1) [Plaintiff is] an "applicant"; (2) [Defendant is] a "creditor"; and (3) [Defendant] discriminated against [Plaintiff] with respect to any aspect of a credit transaction on the basis of the plaintiff's membership in a protected class.'" Jones, 2019 WL 3366104, at *4. Under either the FHA or ECOA, "discrimination based on race can be 'demonstrated by either "a showing of a significant discriminatory effect" or "proof of discriminatory intent," that is disparate impact or discriminatory treatment.'" Id. "A subcategory of these is the practice of 'redlining' and 'reverse-redlining.'" Id.

(a) Disparate Impact.

"[D]isparate-impact claims 'involve [policies or] practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'" Id. (quotations omitted). To claim disparate impact, a plaintiff "must 'identify a "specific test, requirement, or practice" that is responsible for the disparity.'" Id.

### (b) Race Discrimination/Disparate Treatment.

A plaintiff must demonstrate the following to establish a prima facie case of discrimination under the ECOA:

> (1) he is a member of a protected class; (2) that he applied for and was qualified for a loan/credit; (3) despite his qualifications, plaintiff's loan application was denied or plaintiff was denied credit; (4) the lender continued to approve loans for applicants with qualifications similar to those of the plaintiff.

Curley, 2007 WL 1343793, at *4. A plaintiff has "the burden to come forward with evidence that raises a genuine issue of material fact concerning each element of [his] prima facie case of unlawful discrimination on the basis of race." Id. at *5. A claim of racial discrimination can be proven with either direct or circumstantial evidence. See id.

"When a plaintiff presents credible direct evidence that discriminatory animus [partly] motivated or was a substantial factor in the contested…action, the burden of proof shifts to the [defendant] to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." Id. Additionally, a plaintiff can "prove a case of race discrimination through circumstantial evidence, using the familiar burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Id. However, "[t]he plaintiff first must establish a prima facie case of racial discrimination." Id.

Then, the defendant must "respond by producing a legitimate, nondiscriminatory rationale for its decision." Id. If the defendant offers a legitimate, nondiscriminatory rationale, "the burden shifts back to the plaintiff to 'raise a genuine issue of material fact as to whether the…proffered reason was merely a pretext for discrimination.'" Id. "'[A] plaintiff[']s prima facie case, combined with sufficient evidence to find that the

5

[defendant's] asserted justification is false, may permit the trier of fact to conclude that the [defendant] unlawfully discriminated.'" Id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000)).

(c) Redlining.

"Redlining means 'mortgage credit discrimination based on the characteristics of the neighborhood surrounding the would-be borrower's dwelling.'" Simms v. First Gibraltar Bank, 83 F. 3d 1546, fn 12 (1996) (citations omitted). See Jones, 2019 WL 3366104, at *6 (defines redlining as the process of denying credit to a group based on location). This term "derives from loan officers evaluating home mortgage applications based on a residential map where integrated and minority neighborhoods are marked off in red as poor risk areas." Id.

### III. Summary of the Arguments.

In its Motion, Hope asserts that it is unclear whether SIG is pursuing an ECOA claim based on a disparate-impact theory. See Record Document 147-1 at 8. However, even if SIG is pursuing a disparate-impact theory, Hope argues the Court should grant summary judgment in its favor because SIG has not produced any evidence in support of the elements of a disparate-impact claim. See id. Hope submits that SIG has not identified any specific test, requirement, or practice to explain how it falls more harshly on minority loan applicants. See id. at 8–9. Therefore, Hope contends there is no genuine issue of material fact, and it is entitled to judgment as a matter of law on any ECOA claim based on a disparate-impact theory. See id. at 9.

6

Additionally, Hope avers that SIG cannot carry its burden of producing any direct evidence that it discriminated against SIG on the basis of race. See id. at 11. Although SIG's Amended Complaint contains various alleged statements by Hope personnel, Hope advances that the deposition testimony of SIG's members established that none of those alleged statements were made by anyone at Hope. See id. Hope asserts that SIG cannot produce any evidence that shows on its face, without interference or presumption, that it denied SIG's loan application on the basis of race. See id. at 14. Furthermore, Hope submits that it would have denied SIG's loan application anyway due to Alton's history of SBA-loan defaults and financial crimes. See id. at 15. Thus, Hope contends there is no genuine issue of material fact concerning any ECOA claims against Hope based on a direct discrimination theory. See id.

Hope also avers that SIG cannot carry its burden of producing circumstantial evidence of racial discrimination. See id. First, Hope argues SIG cannot offer evidence that it was qualified for the loan. See id. at 16. Second, Hope asserts that SIG cannot offer evidence that it made loans to any non-minority applicants with qualifications similar to SIG. See id. at 17. Even if SIG could establish its prima facie case, Hope advances it had legitimate, nondiscriminatory reasons for declining SIG's loan request. See id. at 20. Hope claims its decline letter to SIG articulated five legitimate, nondiscriminatory reasons for denying its loan request. See id. at 21. Hope submits that SIG cannot bring forth evidence to show that these legitimate, nondiscriminatory reasons were a pretext for discrimination; therefore, it requests the instant Motion be granted. See id. at 26.

Additionally, Hope contends that SIG cannot carry its burden of producing evidence to support its redlining claim. See id. Hope points out that it is unclear whether

7

redlining is a legally cognizable theory of recovery under the ECOA, but if it is, Hope argues SIG does not have a successful redlining claim. See id. at 26–27. Hope avers that SIG's vague and unsupported assertions do not constitute evidence that it denied the loan based on location. See id. at 27.

SIG opposes by first listing 18 "Statement[s] of Undisputed Facts and Relevant Procedural History." See Record Document 187 at 1–4. SIG requests that the Court deny Hope's Motion for Summary Judgment and allow this case to proceed to trial "after Hope is compelled to comply with the rules of discovery." See id. at 4. SIG argues both CU and Hope "have been evasive and obstructive in its production of discovery, while also being overbearing, condescending, and engaging in behavior that amounts to harassment in its treatment of [SIG] in its production of discovery." See Record Document 187-1 at 1. As a result, SIG claims it is "not currently in a position to bear its burden of proof…because Hope has deliberately and maliciously withheld crucial discovery that Hope knows very well is necessary to prove at least some of its claims." See id.

SIG contends that the problem on whether it is pursuing an ECOA claim based on disparate impact theory is because certain "evidence has been withheld by Hope in order to avoid its discovery and evade liability for the damage Hope has caused…[SIG]." See id. at 2. SIG avers that its responses are not deliberately vague or nonresponsive; rather, it alleges it did not receive Hope's discovery regarding policies, procedures, tests, requirements, or practices. See id. at 2–3. SIG submits that "Hope cannot claim that there is no genuine issue of material fact simply because it has been crafty in hiding the truth of the existence of material facts that Hope is well aware are d[e]trimental to its defense of a claim under ECOA based on disparate impact." See id. at 3.

8

Additionally, SIG advances that Hope is not entitled to summary judgment because it has refused to answer discovery requests "that are calculated or likely to reveal direct evidence of racial discrimination on the part of Hope's employees." See id. SIG makes the same argument regarding circumstantial evidence. See id. at 3–4. Moreover, SIG avers that there is a genuine issues of material fact as to whether it was qualified for the loan; however, the supporting evidence for its argument has not been produced by Hope. See id. at 4.

SIG argues that Hope has "obstructed [its] ability to gather evidence of loans made to similarly qualified applicants of non-protected member status." See id. at 5. SIG claims that to date, Hope has not answered its request for interrogatories or properly responded to its request for production. See id. SIG also alleges that Hope's responses to its request for admission "reflect such blatant attempts to obfuscate the truth of Hope's discriminatory practices in its dealings with [SIG]" that genuine issues of material fact exist. See id. at 5–6.

SIG contends that Hope's legitimate, nondiscriminatory reasons are pretextual and "are attempts at character assassination of Alton Alexis…." See id. at 6. It submits the loan was denied because Alton "was seen as uppity and angered certain members of Hope's team with his frustration with their vague and ever-shifting demands." See id. SIG asserts that circumstantial evidence of racial discrimination exists in attitude, mindset, and nonverbal cues, which it alleges are apparent in certain video calls. See id. at 7.

If the Court finds that SIG is unable to carry its burden of proof for its redlining claim, SIG argues it is because Hope has withheld the requested discovery that would have provided the needed evidence. See id. at 9. SIG claims Hope has refused to produce

9

its internal records since June 3, 2024. See id. Additionally, SIG contends that since February 2025, it "has been unable to adequately address the lack of cooperation with the discovery rules on Hope's part." See id. SIG submits that it "must be afforded the opportunity to properly obtain the discovery it has already asked for before this case is decided, whether on a motion for summary judgment or at a trial on the merits." See id. at 10.

Hope replies, asserting that SIG's opposition does not attempt to satisfy its summary judgment burden. See Record Document 194 at 1. Hope avers that SIG has failed to cite to evidence in the record or any legal authority. See id. Additionally, Hope argues SIG's discovery allegations are procedurally improper, unsupported, and demonstrably false. See id. at 2. SIG submits the Declaration of Christopher H. Meredith ("Meredith") to establish that Hope substantively and fully responded to all of SIG's discovery requests within the discovery period and has accommodated every request made by SIG's counsel. See id. "Hope expressly denies each and every discovery-related assertion in the Response and Response Brief that is in any way inconsistent with the Meredith Declaration." Id.

Hope advances the SIG's unfounded allegations do not change the fact that it has not identified any evidence on which a reasonable jury could return a verdict in favor of SIG on its ECOA claims against Hope. See id. Hope objects to SIG's opposition being construed as a motion to compel discovery under Rule 37(a) and submits in the alternative that any Rule 37(a) relief should be denied. See id. at 3. Hope further objects to SIG's opposition being construed as a motion for relief under Rule 54(d) and submits

in the alternative that any Rule 54(d) relief should be denied because it is both procedurally and substantively defective. See id.

Hope reiterates that SIG has failed to identity any evidence to support its claims, including disparate impact discrimination, racial discrimination and redlining. See id. at 5–7, 9. Additionally, Hope reasserts that it has legitimate, nondiscriminatory reasons for declining SIG's loan request. See id. at 8. Hope contends that SIG's own opposition assert that it did not deny the loan on the basis of race. See id. at 10. Specifically, Hope points to the following SIG's assertion in its response brief: "The fact is that the loan was denied because Alton Alexis was seen as uppity and angered certain members of Hope's team with his frustration with their vague and ever-shifting demands." See id. Hope interprets this assertion to mean that the denial of SIG's loan request was motivated, not by race, but by anger due to the attitude and/or behavior of Alton. See id. For all of these reasons, Hope requests that its Motion be granted. See id.

**IV. Analysis.**

Before analyzing each claim against Hope, the Court will briefly address SIG's discovery allegations. Meredith attached his sworn declaration to combat SIG's discovery arguments. See Record Document 194-1. On April 26, 2024, Meredith states that he sent an email to all counsel of record attaching Hope's Initial Disclosures and producing a link to a CCTB Cloud Share containing documents Bates stamped HFCU.000001 through HFCU.001616. See id. at 1. On April 30, 2024, this Court entered its initial Scheduling Order (Record Document 55), which set a discovery deadline of October 15, 20204 and a trial date of April 14, 2025. See id. at 2. Due to issues with completing discovery, the

Court extended the discovery deadline to February 18, 2025 and the trial date to July 14, 2025. See id. at 5; see also Record Document 109.

On March 19, 2025, Meredith states that counsel for SIG sent an email stating that she was unable to locate copies of certain policies and procedures regarding lending that Hope had produced on November 22, 2024. See Record Document 194-1 at 7. Meredith claims that this email was the first time SIG suggested to him that it did not have, or it wanted duplicate copies of the materials Hope produced back in November. See id. On March 20, 2025, Meredith emailed SIG's counsel and counsel for CU with links to CCTB Cloud Shares containing duplicate copies of the documents. See id.

On March 27, 2025, SIG filed a motion for additional time to respond to the pending summary judgment motions because SIG allegedly only received certain information as of March 21. See id. Meredith disabled the CCTB Cloud Share links on April 2, 2025, as the discovery deadline had well expired. See id. at 8. After counsel for SIG filed several motions for additional time, she sent Meredith an email on April 30, 2025 asking him to re-activate the link. See id. at 9. During a telephone status conference with the Court on May 1, 2025, SIG's counsel requested duplicates of every other document Hope had produced. See id. Meredith agreed to make all of the requested documents available again for a period of 72 hours, which she confirmed would satisfy SIG's request. See id. Meredith asserts that from November 22, 2024 until May 5, 2025, he received no emails or phone calls from SIG's counsel requesting a conference under Local Rule 37.1. See id. at 10. Meredith advances that counsel for SIG never raised any issues with adequacy or sufficiency of discovery during any of the Court's hearings or status conferences with counsel. See id.

12

The Court finds that SIG had ample opportunity to file a motion to compel or to seek further discovery at the appropriate time if needed; however, no such relief was ever requested. SIG was given multiple chances to review all the necessary discovery materials to adequately oppose this Motion. SIG's unsworn speculative statements accusing Meredith and Hope of purposefully concealing information is uncorroborated by the evidence. It has failed to verify any of these unfounded allegations. At this late stage, SIG's belated complaints regarding alleged deficiencies in discovery are not before the Court. Instead, the record before the Court evidences that SIG failed to properly oppose this Motion under the Court's local rules and the Federal Rules of Civil Procedure. SIG has not sufficiently opposed this Motion because it fails to offer any facts or evidence from the summary judgment record that supports its arguments. The Court will now discuss the merits of each of SIG's claims against Hope.

(a) Disparate Impact.

SIG has failed to identify any specific test, requirement, practice, or policy that points to a disparate impact. SIG does not "provide any factual contention that one might exist." Jones, 2019 WL 3366104, at *4. Instead, SIG simply alleges that "Hope's policies and practices constitute a pattern or practice of discrimination on the basis of race, sex, and national origin in violation of the ECOA." See Record Document 25 at ¶ 7. Throughout its Amended Complaint, SIG vaguely refers to these policies and procedures of Hope but never actually provides any specification. See id.

Additionally, Hope has submitted sufficient evidence to show that there are no genuine issues of material fact on whether it implemented policies or practices that left a disparate impact. For example, when asked what policies or practices SIG is referring to,

13

Alton testified that he is "just going by visual and…reality." See Record Document 148-27 at 160. Alton stated that he did not have the information to identify a particular policy or practice. See id. at 160–61. Besides SIG and Alton's conclusory and speculative statements regarding Hope's discriminatory policies and procedures, there is no sufficient evidence from the summary judgment record to show such policies and procedures ever existed. Therefore, the Court finds that SIG has "failed to allege any specific policies or fact, but rather 'tender[ed] "naked assertion[s]" devoid of "further factual enhancement."'" Jones, 2019 WL 3366104, at *4. Summary judgment with respect to SIG's disparate impact claim is **GRANTED**. This claim is **DISMISSED WITH PREJUDICE**.

(b) Race Discrimination/Disparate Treatment.

In its Amended Complaint, SIG states a claim for relief under the ECOA. See Record Document 25. SIG alleges the following: (1) SIG is a loan applicant; (2) Hope is a creditor; and (3) Hope discriminated against SIG with respect to denying its loan application on the basis of race. See id. However, merely alleging this claim does not guarantee SIG can survive summary judgment. SIG has failed to present any direct evidence that Hope's alleged discriminatory animus motivated or play a substantial role in denying its loan application.

With respect to direct evidence, SIG member Junius Alexis ("Junius") testified that Dents's attitude would change during certain phone calls "when the white guys came on the phone." See Record Document 148-29 at 84–85. Junius stated that since SIG "had credentials," its loan must have been denied based on race because there are no other possibilities. See id. at 98. Additionally, Alton testified that he visually could tell it was their "blackness" that disqualified SIG for the loan. See Record Document 148-27 at 152–53.

14

He alleged that Hope failed to review anything regarding the project, and everything went south when SIG's members joined the video calls. See id. at 154. He claims that Hope wanted a "photo op," but it was never going to grant the loan because SIG's members were black. See id. at 165. Other than this uncorroborated deposition testimony, SIG has failed to present any direct evidence illustrating Hope's discriminatory animus. A review of the summary judgment record reveals no direct evidence of race discrimination on the part of Hope.

Even though there is no direct evidence of race discrimination, SIG may prove its claim through circumstantial evidence by first establishing its prima facie case. However, the Courts finds that SIG has failed to successfully establish the prima facie case for discrimination under the ECOA. The only element SIG has satisfied is the first because each of SIG's members are black, thereby making them members of a protected class. SIG has failed to bring forth evidence that raises a genuine issue of material fact concerning the other three elements of its prima facie case. See Curley, 2007 WL 1343793, at *5.

After reviewing the summary judgment record, there is no evidence to suggest that SIG was qualified for the loan. In his deposition, Alton testified that SIG qualified for the loan for the following reasons: (1) SIG had the ability to repay the loan; (2) SIG had a good project going; and (3) SIG had the financials and income. See Record Document 148-27 at 165–66. Junius also testified that SIG qualified for the loan because it "had everything in place" and had "credentials." See Record Document 148-29 at 91, 98. In addition to "credentials," Junius stated that SIG's members were educated, from the neighborhood, and felt they were going to make a difference. See id. at 100, 101.

Furthermore, SIG member James Alexis ("James") provided deposition testimony that he believed SIG was qualified for the loan because "the numbers were pretty positive for [them]." See Record Document 148-28 at 14.

This speculative and unsupported deposition testimony is the only summary judgment evidence SIG has presented to demonstrate it was qualified for the loan. Even though Hope ultimately denied SIG's loan application, it was not despite qualifications because SIG had no qualifications. SIG's blanket statements and beliefs that it met Hope's qualifications are insufficient to overcome summary judgment. Thus, SIG has failed to come forth with evidence that raises a genuine issue of material fact concerning the second and third elements of the prima facie case.

Additionally, SIG fails to satisfy its burden as to the fourth element of the prima facie case. In SIG's response to certain discovery requests, it identifies Canseco Properties ("Canseco") in New Orleans and the Kimble Development ("Kimble") in Grambling, Louisiana. See Record Document 147-1 at 18–19. Even though SIG identifies these alleged comparators, identification alone is insufficient to establish the fourth element. SIG fails to adequately compare Canseco and Kimble to itself. SIG broadly points to news articles that discuss these two stores and argues that Sinesio Canseco, the owner of the New Orleans grocery store, is a white-Hispanic male. See Record Document 187-1 at 5; see also Record Document 148-9. However, these news articles about Canseco and Kimble are insufficient because an adequate comparison has not been performed to satisfy the fourth element. Therefore, SIG fails to present genuine issues of material fact with respect to three elements of its prima facie case.

Even though the burden does not shift to Hope, it has put forth sufficient evidence that it has multiple legitimate, nondiscriminatory reasons for denying SIG's loan application. In Hope's decline letter to SIG, it lists the following five reasons for denial: (1) inadequate evidence of financial cash flow—construction and operating cost did not demonstrate positive cash flow; (2) insufficient projections provided; (3) limited grocery management experience for the operator and contractor(s); (4) market concerns—market study reports strong grocery competition in the market; and (5) lack of supportable construction budget. See Record Document 148-8 at 2. In addition to this letter, Hope has presented an abundance of evidence to combat SIG's race discrimination claim. See Record Documents 148-31 at 48; 148-30 at 27; 148-32 at 33–34, 35, 53; 148-33 at 46; & 148-34 at 54.

Even if SIG could have established its prima facie case, which it cannot, Hope had several legitimate, nondiscriminatory reasons for denial, and SIG cannot show any evidence of pretext on the part of Hope. The Court finds summary judgment as to SIG's ECOA race discrimination claim is **GRANTED**. This claim is **DISMISSED WITH PREJUDICE**.

(c) Redlining.

In SIG's Amended Complaint, it alleges that Hope has a history of redlining because it has denied black owned businesses in majority-minority neighborhoods, such as the West End of New Iberia, the Third Ward of New Orleans, and Grambling, the opportunity to apply for and obtain commercial real estate-related loans, based upon the racial and ethnic composition of the business owners and of those neighborhoods. See Record Document 25 at ¶ 2. While SIG recognizes that Hope has previously financed

17

grocery stores in Grambling and Gentilly in a majority-minority neighborhoods, it argues that "neither one of the owners were minorities." See id.

The Court finds that SIG has failed to carry its burden to overcome summary judgment with respect to its redlining claim. SIG's sole basis for this claim is made through vague and unsupported assertions, which are not enough to defeat Hope's motion. SIG's opposition does not point to any evidence within the summary judgment record to support its redlining claim.

The summary judgment record contains sufficient evidence to support summary judgment in favor of Hope. Kathy Saloy ("Saloy"), Hope's previous Senior Vice President of Community and Economic Development, testified that Hope has financed approximately ten to twelve grocery stores in low to moderate income areas. See Record Document 148-31 at 27. Similarly, Dents testified that the income level of SIG's project was not a factor in the loan denial because distributing loans in low-income areas is part of Hope's mission. See Record Document 148-32 at 54. Thus, SIG has failed to meet its summary judgment burden and put forth evidence that there are genuine issues of material fact as to its redlining claim. It is not the duty of this Court to sift through the summary judgment record and find arguments to support SIG's claims. Therefore, summary judgment with respect to SIG's redlining claim is **GRANTED**. This claim is **DISMISSED WITH PREJUDICE**.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Hope's Motion for Summary Judgment (Record Document 147) is **GRANTED**. All of SIG's claims against Hope are **DISMISSED WITH PREJUDICE**.

An Order consistent with this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 29th day of May, 2025.

_____
UNITED STATES DISTRICT COURT JUDGE