# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

SIXELA INVESTMENT GROUP                    CIVIL ACTION NO. 23-0277

VERSUS                                     JUDGE S. MAURICE HICKS, JR.

HOPE FEDERAL CREDIT UNION,                 MAGISTRATE JUDGE WHITEHURST
ET AL.

## MEMORANDUM RULING

Before the Court are four Motions for Partial Summary Judgment (Record Documents 137, 140, 143, & 145) and one Motion for Summary Judgment (Record Document 139) filed by Defendant Communities Unlimited Inc. ("CU"). Plaintiff Sixela Investment Group ("SIG") opposed. See Record Documents 184, 185, 186, & 189. CU replied. See Record Documents 192 & 193.

For the reasons stated below, the following motions filed by CU are **GRANTED**: Motion for Partial Summary Judgment Regarding Affirmative Defenses (Record Document 137); Motion for Summary Judgment on Breach of Contract (Record Document 139); Motion for Partial Summary Judgment on Alleged Interest Rates (Record Document 140); and Motion for Partial Summary Judgment on Alleged Construction Cost Damages (Record Document 145). CU's Motion for Partial Summary Judgment Regarding No Contract (Record Document 143) is **DENIED AS MOOT**. All claims asserted by SIG against CU are **DISMISSED WITH PREJUDICE**. SIG may not collect economic losses or damages relating to disparate interest rates or construction costs from CU.

**BACKGROUND**

SIG filed the instant suit against Defendants Hope Federal Credit Union ("Hope") and CU. See Record Document 25. SIG claims that Hope violated the Equal Credit Opportunity Act ("ECOA") by denying, on the basis of race, its request for a commercial loan to build a grocery store in New Iberia, Louisiana. See Record Document 147-1 at 5. SIG asserts that CU breached its alleged contract with SIG by sharing "incomplete projections" with Hope, which led to the denial of SIG's loan application. See Record Document 137-12 at 4.

SIG alleges that Hope's mortgage lending-related policies and practices constitute discrimination against applicants on the basis of race, sex, or national origin in violation of the ECOA. See Record Document 25 at ¶ 25. SIG contends that Hope's policies and practices constitute a pattern or practice of discrimination, discouragement, and resistance to the full enjoyment of rights secured by the ECOA. See id. at ¶ 26. Additionally, SIG claims that CU consultant Brian Wells ("Wells") and his consultant friend, Shawn Park ("Park"), were forced upon SIG members by Hope Commercial Loan Officer Larry Dents ("Dents"). See id. at ¶ 5. SIG submits that CU entered into a contract with SIG to provide projections as requested by a Hope representative. See id. at ¶ 8. However, SIG alleges that CU's analysis was not conducted in a manner as others in their field, and it provided erroneous information to Hope with SIG's permission, thereby causing the loan to be denied. See id. Due to Hope's policies and practices, as well as CU's breach of contract, SIG asserts it has suffered economic losses and demands $8,000,000.00. See id. at ¶ 30.

CU filed a counterclaim against SIG, asserting that SIG purposely and fraudulently omitted information regarding the prior bankruptcies of SIG member Alton Alexis ("Alton") in an effort to conceal his prior commercial fraud-related criminal convictions. See id. Through these omissions, CU claims that SIG fraudulently obtained access to Hope's loan application process and free consulting work performed on behalf of SIG by CU. See id.

## LAW AND ANALYSIS

### I. Summary Judgment Standard.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). When reviewing a motion for summary judgment, the court must view "all facts and inferences in the light most favorable to the non-moving party." Romero v. City of Grapevine, Tex., 888 F. 3d 170, 175 (5th Cir. 2018). "A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." Streber v. Hunter, 221 F. 3d 701, 737 (5th Cir. 2000). Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial. See Calpetco 1981 v. Marshall Exploration, Inc., 989 F. 2d 1408, 1415 (5th Cir. 1993).

"Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion." Lucero v. General Motors

LLC, No. 21-02893, 2022 WL 16578415, at *2 (S.D. Tex. Nov. 1, 2022). "The non-movant then must provide specific facts showing there is a genuine dispute." Id. The non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a 'scintilla of evidence.'" Hathaway v. Bazanay, 507 F. 3d 312, 319 (5th Cir. 2007).

"It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. See Lucero, 2022 WL 16578415, at *2 (citing Malacara v. Garber, 353 F. 3d 393, 405 (5th Cir. 2003)). "It is not the duty of the Court to search the record for evidence that might establish an issue of material fact." Id. See LeBlanc v. DISA Global Solutions, Inc., No. 17-76, 2020 WL 8363123, at *2 (M.D. La. Feb. 19, 2020). Specifically, Local Rule 56.2 in the Western District of Louisiana provides, "A memorandum in opposition to a motion for summary judgment must contain: (1) The material facts that the opponent contends are genuinely disputed; and (2) A pinpoint reference to the document or other exhibit establishing that each such fact is genuinely disputed." LR56.2.

**II. Governing Law: Louisiana Substantive Law.**

"The Fifth Circuit has interpreted the United States Supreme Court's decision in Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), to 'require[] that federal courts apply substantive state law when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings.'" Freeman v. Ocean Harbor Casualty Ins. Co., No. 22-5546, 2025 WL 958225, at *3 (E.D. La. Mar. 28, 2025). The instant dispute was removed to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. See Record Document 2. Therefore, this Court must apply substantive law. See Freeman,

4

2025 WL 958225, at *3. With respect to most of the issues presented on summary judgment, all parties seemingly concede that Louisiana substantive law is applicable. See id.

### III. Motion for Partial Summary Judgment: Affirmative Defenses as to CU's Counterclaim (Record Document 137).

(a) Summary of the Arguments.

CU asserts that seven of SIG's affirmative defenses, specifically numbers two through eight, contained within its Amended Answer to CU's Second Supplemental and Amended Answer and Affirmative Defenses with First Supplemental Counterclaim should be dismissed. See Record Document 137 at 1. The seven affirmative defenses at issue are the following: duress; misrepresentation; breach of contract; unclean hands; estoppel; and failure of consideration. See Record Document 137-12 at 7–15. Each defense will be summarized in turn.

With respect to the defense of duress, CU argues that there is insufficient information to understand the factual and legal grounds that would support a theory that duress/coercion by Hope against SIG, if proven, would provide an affirmative defense to SIG against CU's counterclaims. See id. at 7. CU contends that the evidence produced in discovery does not support a claim of duress or coercion against SIG on the part of Hope. See id. at 8. As to the defense of misrepresentation, CU submits that no such allegation was asserted in SIG's Complaint, Amended Complaint, or its response to CU's initial counterclaim. See id. at 10. Moreover, CU avers that SIG has not cited any evidence in support of this new allegation. See id. CU asserts that this defense is directly contradicted by SIG's fourth affirmative defense and the evidence. See id. at 10–11.

For SIG's breach of contract defense, CU advances that there is insufficient information to determine in what way this affirmative defense, if proven, would defect CU's counterclaims against SIG. See id. at 11. Additionally, CU contends that SIG is asserting a new allegation by way of affirmative defense. See id. at 12. Thus, given the inapplicability of breach of contract as an affirmative defense, combined with the contradictory evidence, CU avers that this defense cannot be supported and should be dismissed. See id.

With respect to the unclean hands defense, CU submits that there is insufficient information provided to understand in what way CU's alleged breach of contract would trigger the doctrine, thereby defeating CU's counterclaims. See id. at 13. Because the doctrine of unclean hands is an equitable doctrine, CU asserts that it cannot apply when there is already a rule emanating from legislation or custom. See id. As to the defense of estoppel, CU argues there is insufficient information to discern the connection between the facts alleged and the defense asserted or to determine on what grounds such alleged facts and defense, if proven, would defeat CU's counterclaims. See id. at 14.

For the two failure of consideration defenses, CU avers it is unclear in what way the factual allegations and defenses asserted, if proven to be true, would defeat CU's counterclaims against SIG. See id. at 15. Additionally, CU contends that these defenses appear to be another attempt by SIG to expand its breach of contract allegations against CU. See id. Ultimately, CU maintains that SIG's second through eighth affirmative defenses should be dismissed. See id. at 16.

SIG opposed by filing an omnibus opposition with respect to four of CU's motions, including this Motion for Partial Summary Judgment. See Record Document 184. SIG

asserts sixteen "Statement[s] of Undisputed Facts and Relevant Procedural History." <u>See</u> <u>id.</u> at 1–4. SIG also provides a manual attachment of two recorded meetings and transcripts to support its opposition. <u>See</u> Record Document 186.

CU replied, arguing that SIG failed to substantially oppose its Motion under Local Rule 56.2. <u>See</u> Record Document 193 at 1. CU asserts that there is no memorandum in support or another explanation as to how SIG's "Statement of Undisputed Facts and Relevant Procedural History" relate to the uncontested facts found in this Motion. <u>See id.</u> at 2. Additionally, CU submits that SIG has not cited any law in its opposition, so it is not discernable in what manner relevant laws might be applied to the facts alleged by SIG in its opposition. <u>See id.</u> CU also advances that SIG fails to adequately explain how the attached exhibits support the facts alleged by SIG. <u>See id.</u>

<u>(b) Duress.</u>

Under Louisiana Civil Code article 1959:

> [C]onsent to a contract "is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation. Age, health, disposition, and other personal circumstances of a party must be taken into account in determining reasonableness of the fear."

<u>Mayer Electric Supply Co., Inc. v. Chester Electric, LLC</u>, No. 21-372, 2022 WL 3369994, at *8 (E.D. La. Aug. 16, 2022) (quoting La. Civ. Code art. 1959). SIG argues it was coerced into using CU by Hope; however, SIG offers no sufficient evidence or argument that its consent was obtained through duress or coercion. <u>See</u> Record Document 123 at 7. Besides a broad reference to exhibit six, which includes two recorded Webex meetings and two transcripts, SIG's opposition does not direct the Court to evidence relevant to its

duress defense. It is not the Court's duty to search the record for evidence that supports SIG's arguments and overcomes summary judgment.

Additionally, CU has presented sufficient evidence to show that SIG's consent was not obtained through duress or coercion. During the March 24, 2022 Webex meeting, Dents repeatedly explained to SIG's members that they could choose whoever they wanted as a consultant. See Record Document 148-25 at 15, 27. In his deposition, Dents testified that he told SIG's members they could select whoever they wanted as a consultant. See Record Document 137-4 at 9. In fact, Dents stated that Alton preferred to use a consultant that Hope was familiar with. See id. at 10. SIG has not presented any evidence or factual support to combat CU's Motion or arguments set forth within the Motion; therefore, summary judgment is **GRANTED** with respect to the affirmative defense of duress.

(c) Misrepresentation.

Under Louisiana Civil Code article 1953, "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silent or inaction." Jeanes v. McBride, No. 16-1259 2019 WL 2387863, at *3 (W.D. La. June 4, 2019). The Louisiana Fifth Circuit Court of Appeal has "clarified that the legal standard for showing fraud is the intention not to perform at the time the promise is made because it constitutes a misrepresentation of a present rather than a future fact…." Id. at *4.

SIG asserts the defense of misrepresentation under article 1953. <u>See</u> Record Document 123 at 7. It alleges that CU said it could deliver exactly what was needed for a successful loan process and approval due to its previous relationship of working with Hope on this type of loan; however, CU failed to do what it promised. <u>See id.</u> SIG claims that article 1953, combined with certain emails and the recording of the March 24, 2022 meeting, demonstrates misrepresentation. The Court disagrees. There is insufficient evidence in the summary judgment record to show misrepresentation on the part of CU.

As discussed under the duress analysis, CU was not forced onto SIG as a consultant. The evidence contained within the summary judgment record, such as the meeting recordings and depositions, illustrate that SIG was free to choose a consultant. Hope simply recommended CU. SIG has failed to identify or point the Court to the emails and specific conversations purportedly constituting misrepresentation. As stated above, the Court is not tasked with the duty to search the summary judgment record for SIG. Therefore, summary judgment is **GRANTED** with respect to the affirmative defense of misrepresentation.

<u>(d) Breach of Contract.</u>

As an initial matter, the Court points out that SIG incorrectly lists Park as an employee of CU. Park is a consultant friend of Wells who aided him in the project, but he has never worked with CU. <u>See</u> Record Document 148-35 at 19–20. Thus, for the purposes of breach of contract, Wells is the only CU consultant.

The written agreement at issue between SIG and CU is a Scope of Services memorandum ("SOSM") executed on April 20, 2022. <u>See</u> Record Document 143-3. SIG

claims that CU breached the SOSM when it communicated confidential business information, specifically projections, without SIG's approval or consideration, thereby violating the confidentiality clause of the SOSM. See Record Document 184 at 2. Additionally, SIG asserts that CU breached the SOSM when it failed to provide the information agreed to in the SOSM. See id. SIG alleges a conspiracy or cover up took place between CU and Hope. See id. at 3. To support its argument, SIG broadly points to exhibits three and seven but draws no connection between its arguments and this evidence. As the Court stated above, it is not the duty of the Court to search the record for this connection.

Furthermore, CU has presented sufficient evidence to show that this affirmative defense lacks merit. Wells testified that he never shared any completed projections to anyone at Hope. See Record Document 148-35 at 16–17, 70. Additionally, Wells testified that no one at Hope directed him on how to complete his projections for SIG. See id. at 33. Wells stated that SIG's members were aware he was communicating with Hope and never told him to cease all communications with Hope. See id. at 60–61, 64. Wells asserts that all parties were aware that part of his role was to act as the "go-between" for Hope and SIG. See id. at 62–63; see also Record Document 148-34 at 33.

The summary judgment record contains other corroborating deposition testimony in support of CU's Motion. For example, Keven Coogan ("Coogan"), Hope's former Vice President of Community and Economic Development, recalled that it was made clear to SIG that Hope would be working with CU and Wells to try to get SIG's application ready for underwriting. See Record Document 148-34 at 8, 34. Additionally, Patrick Mcdonough ("Mcdonough"), a previous commercial loan analyst at Hope, testified that he never

received any final or completed projections by Wells or CU. See Record Document 148-33 at 8, 21. Dents also testified that he never received any such projections. See Record Document 148-32 at 20.

SIG has not presented any evidence to combat the highlighted deposition testimony or other evidence in the summary judgment record. SIG's conclusory and speculative statements from its counsel and its members are insufficient to overcome summary judgment. SIG fails to direct the Court to specific evidence that supports this affirmative defense. Therefore, summary judgment is **GRANTED** with respect to the breach of contract affirmative defense.

(e) "Unclean Hands."

The Louisiana Supreme Court explains the clean hands doctrine with the following maxim: "'He who comes into a court of equity must come with clean hands.'" Stanley v. Trinchard, No. 02-1235, 2010 WL 3168113, at *5 (E.D. La. Aug. 9, 2010). This doctrine "requires a showing of conduct contrary to the dictates of good conscience or fair dealing, and refers to willful misconduct." Nowling v. Aero Servs. Intern., Inc., 734 F. Supp. 733, 743 (E.D. La. 1990). There must be "some nexus between the alleged misconduct and the activity sought to be enjoined." Id.

SIG argues that under Civil Code article 2323, the doctrine of "Unclean Hands" bars CU's recovery because it breached the SOSM by discussing matters with Hope without SIG's consent. See Record Document 123 at 8. First, the Court notes that article 2323 is the comparative fault article, and the correct name for this doctrine is the clean hands doctrine. SIG also fails to illustrate the relevance and relationship between the

evidence and its unclean hands defense. SIG does not direct the Court as to what evidence illustrates CU's willful misconduct. As stated previously, it is not the duty of this Court to search the summary judgment record for evidence supporting SIG's opposition.

Additionally, CU has presented sufficient evidence to satisfy its burden under the summary judgment standard. The deposition testimony analyzed above demonstrates that CU joined this project to help SIG with its loan application. SIG has failed to point to any evidence that CU came into the project with ill intent or willful misconduct. SIG's conclusory and speculative assertions alone are insufficient to overcome summary judgment, and summary judgment is **GRANTED** with respect to its unclean hands affirmative defense.

(f) Estoppel.

"Estoppel is the 'effect of the voluntary conduct of a party whereby [it] is barred from asserting rights against another party justifiability relying on such conduct and who has changed [its] position to [its detriment] as a result of such reliance.'" Mayer Electric, 2022 WL 3369994, at *7. Louisiana law does not favor estoppel; thus, "'a party cannot avail himself of that doctrine unless he proves all essential elements of the plea.'" Id. The three essential elements are: "'(1) a representation; (2) a justifiable reliance on the representation; and (3) a change in position to one's detriment as the result of such reliance.'" Id.

In its opposition, SIG does not point to evidence or facts to demonstrate any of the essential elements required for estoppel. The word "estoppel" is not even mentioned in SIG's opposition. As the Court has repeatedly stated, it is not the duty of the Court to find

evidence to support SIG's arguments. Even assuming a representation was made, SIG "fails to demonstrate that [it] was justifiable for it to rely on any such representation." Mayer Electric, 2022 WL 3369994, at *8. CU presents various pieces of evidence, such as deposition testimony and meeting transcripts, demonstrating that neither CU nor Hope ever guaranteed the approval of SIG's loan application. See Record Document 148-25 at 9–10, 26, 43; see also Record Document 148-27 at 48. Such a promise was never made; therefore, SIG's reliance on this absent promise does not trigger the application of an estoppel defense. Therefore, summary judgment is **GRANTED** with respect to the affirmative defense of estoppel.

    (g) Failure of Consideration.

    "Louisiana Code of Civil Procedure Article 1005 lists 'failure of consideration' as an affirmative defense." Mayer Electric, 2022 WL 3369994, at *9. "However, it is well established that consideration is not required under Louisiana law." Id. Louisiana courts provide the following explanation for Article 1005:

> [T]his article "at the time of its enactment was in accordance with the terminology of the former Civil Code articles addressing 'cause.' However, when those Civil Code articles were amended in 1983 to remove the term "consideration" from the explanation of 'cause,' the legislature failed to likewise amend [the Louisiana Code of Civil Procedure]."

Id.

    SIG asserts this defense "because the items of value, projection, statements, etc. were never delivered to [it]." See Record Document 123 at 9. Due to the lack of consideration, SIG argues that CU is not entitled to the damages or relief sought. See id. However, SIG fails to provide sufficient evidence or factual support to overcome summary

judgment as to this defense. SIG does not establish a connection between its arguments and the evidence to satisfy its burden under the summary judgment standard. Even assuming SIG's allegations to be true, which the Court does not, consideration is not required under Louisiana law. Thus, summary judgment is **GRANTED** with respect to SIG's two failure of consideration affirmative defenses.

After discussing all seven affirmative defenses at issue in this Motion, it is evident that SIG has not presented sufficient factual support or evidence to overcome summary judgment. Therefore, CU's Motion for Partial Summary Judgment regarding the Affirmative Defenses (Record Document 137) is **GRANTED** with respect to all seven affirmative defenses at issue.

**IV. Motion for Summary Judgment: Breach of Contract (Record Document 139).**

(a) Summary of the Arguments.

CU files this Motion for Summary Judgment for SIG's failure to satisfy its burden of proof regarding its breach of contract claim against CU. See Record Document 139-19 at 3. CU argues SIG cannot show that CU had undertaken an obligation not to share information with Hope. See id. at 7. CU asserts that the evidence shows it had undertaken an obligation to share information with Hope. See id. However, to the extent there ever was an obligation to not share information with Hope, CU contends that SIG waived any right to enforce it. See id.

CU claims that from the beginning, SIG was informed that Hope would directly work and communicate with any consultant chosen by SIG, and Hope expected said consultant to explain certain number projections. See id. at 8. Additionally, CU avers that

14

SIG waived any expectation that its chosen consultant would not directly work and communicate with Hope. See id. CU advances that SIG has not alleged that it ever objected to such actions, only that it did not provide express permission. See id. at 9. With SIG's actions being inconsistent with its alleged expectations, CU asserts that SIG waived whatever plausible argument it might otherwise have regarding said expectations. See id.

CU also argues SIG cannot show that it failed in performing any obligation. See id. at 12. It maintains that there is no evidence that anyone employed at CU shared Wells's incomplete projections with Hope. See id. Additionally, CU contends that SIG cannot show that any alleged breach led to damages being incurred as a result of the loan application denial. See id. at 13. CU points out that the "insufficient projections" mentioned in Hope's denial letter on July 14, 2022 refer to SIG's own projections, not to any "incomplete projections" drafted by Wells. See id. Moreover, CU submits that no evidence has been produced to indicate that Hope relied in any fashion, or even considered, any projections from CU in the decision to deny SIG's loan application. See id.

SIG opposed with the previously mentioned omnibus opposition which lists sixteen statements of uncontested material facts. See Record Document 184. SIG asserts sixteen "Statement[s] of Undisputed Facts and Relevant Procedural History." See id. at 1–4. SIG provided a manual attachment of two recorded meetings and transcripts to support its opposition. See Record Document 186.

CU replied, advancing that SIG does not dispute that it waived the right to enforce CU's alleged obligation for it to not share information with Hope. See Record Document 193 at 3. It is CU's position that SIG's failure to substantively address the waiver issue amounts to the waiver of any argument against it. See id. at 4. Furthermore, CU asserts

that SIG's own evidence supports the uncontested material fact that the alleged breach did not occur, and Hope did not rely on the alleged breach to deny the loan application. See id. CU claims that SIG appears to assert additional allegations of breach in its omnibus opposition, but CU contends such allegations are also deficient. See id. at 5. CU ultimately submits that SIG has not produced any evidence to call into question the uncontested fact that Hope did not deny SIG's loan application due to CU's alleged breach. See id. at 7.

(b) Analysis.

The essential elements of a breach of contract claim in Louisiana are the following: "'(1) the obligor's undertaking of an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee.'" High Performance Props. No. 3, LLC v. Educ. Mgmt., Inc., No. 24-1821, 2025 WL 1115705, at *4 (E.D. La. Apr. 15, 2025). In the instant case, SIG claims CU breached the confidentiality section of the SOSM when CU allegedly shared projections with Hope without SIG's consent. See Record Document 25 at ¶¶ 5, 8, 18, & 20. The confidentiality provision reads as follows: "The consultant will treat all information about the organization as confidential." See Record Document 143-3 at 3.

CU points to several pieces of evidence from the summary judgment record that satisfies its burden of proof under the summary judgment standard. For example, during the March 24, 2022 Webex meeting, Mcdonough explained that Hope does not normally tell CU what they need to do. See Record Document 148-25 at 28. Rather, SIG will hand over certain documents for the consultant to review, they will look it over, and can reach out to either SIG or Hope with any questions. See id. While it is true that Hope and CU

had a working relationship, several employees of Hope testified that they never received copies of projections. For instance, Dents testified that he does not remember seeing any such projections or receiving a copy. See Record Document 148-32 at 20, 21, 23, & 75. Dents explained that he would have remembered receiving these projections. See id. at 24, 50.

Additionally, Dents testified that all three SIG members were informed that if CU had questions, they would reach out to Hope for assistance. See id. at 38. According to Dents, all of SIG's members were informed that Hope would be working together with the consultant. See id. at 39. In addition to Dents, Mcdonough testified in his deposition that he never saw any partial or finished projections from Wells. See Record Document 148-33 at 21. Mcdonough stated that he never made any recommendation based on SIG's initial projections because neither Wells nor anyone else at CU shared SIG's projections. See id. at 31.

Coogan's deposition testimony further supports CU's argument that it did not breach its alleged contract with SIG. Coogan testified that he does not remember ever receiving projections from Wells or discussing such projections. See Record Document 148-34 at 15. Coogan also confirmed that CU's role was to act as an intermediary between Hope and SIG. See id. at 33. He explained that it was made clear to all parties that Hope would be working with the consultant to try to get what was needed to present SIG's loan application to underwriting. See id. at 34.

Wells also provides corroborating testimony that he only shared projections with SIG and Park. See Record Document 148-35 at 18–20. Wells confirmed that he did not share projections with anyone at Hope; however, he did walk through some of his initial

thoughts with Hope. See id. at 20, 70. He stated that he never received any direction from Hope on how to complete his projections. See id. at 33. Wells testified that the members of SIG were aware he was communicating with Hope. See id. at 60–61. Furthermore, none of SIG's members ever told Well to not communicate with Hope. See id. at 61, 64. It was Wells's understanding that his role as a consultant was to act as an intermediary between SIG and Hope. See id. at 62–63. Throughout his deposition, Wells consistently stated that he never shared any actual or complete projections with anyone at Hope. See id. at 80, 95.

SIG's opposition contains conclusory allegations that CU breached the SOSM. See Record Document 184. Besides these conclusory and speculative allegations made by SIG and its counsel, there is nothing else in the summary judgment record to combat CU's argument that it did not breach the SOSM. SIG attaches several exhibits in support of its opposition; however, it fails to illustrate how these exhibits support SIG's breach of contract claim. The summary judgment record is replete with deposition testimony stating that neither Wells nor anyone else at CU breached the confidentiality provision by communicating certain projections with Hope. SIG never told CU or Wells to cease all communications with Hope because as a consultant, it was expected that Wells would be acting as an intermediary between SIG and Hope.

SIG has failed to meet its burden under the applicable standard because it does not point to sufficient evidence from the record to overcome summary judgment. SIG does not establish any relationship between its list of undisputed facts and its exhibits. It is not the duty of this Court to establish this relationship or make such an argument for SIG. Therefore, with respect to SIG's breach of contract claim against CU, summary judgment

is **GRANTED**. SIG's breach of contract claim against CU is **DISMISSED WITH PREJUDICE**.

**V. Motion for Partial Summary Judgment: Existence of a Contract (Record Document 143).**

(a) Summary of the Arguments.

CU moves this Court for summary judgment, as there was no valid contract between CU and SIG. See Record Document 143 at 1. CU argues the only written agreement in effect between it and SIG was the SOSM. See id. CU contends that there was no consideration given by SIG for CU to perform said services. See id. Thus, CU submits that this Court must conduct a choice-of-law analysis, and Arkansas law should apply to SIG's breach of contract claim, otherwise, Arkansas policies will be harmed by the application of Louisiana law. See id. Unlike Louisiana law, legal consideration is required for a valid contract in Arkansas. See id. As CU and SIG's agreement lacked consideration, CU asserts that it was not a valid contract; therefore, it maintains that SIG's claim for breach of contract should be dismissed. See id. at 1–2.

SIG opposed with the previously mentioned omnibus opposition which lists sixteen statements of uncontested material facts. See Record Document 184. SIG asserts sixteen "Statement[s] of Undisputed Facts and Relevant Procedural History." See id. at 1–4. SIG provided a manual attachment of two recorded meetings and transcripts to support its opposition. See Record Document 186. CU replied, asserting that SIG has not provided any explanation as to why the Court should not choose Arkansas law to interpret the alleged contract and find that said document is not a contract due to a failure of consideration under Arkansas law. See Record Document 193 at 7.

(b) Analysis.

CU asserts this Motion as an alternative avenue to dismiss SIG's breach of contract claim. In its above analysis of CU's Motion for Summary Judgment (Record Document 139), the Court held that CU did not breach the SOSM. The summary judgment record supports the conclusion that there are no genuine issues of material fact on whether CU breached the SOSM. SIG has failed to present sufficient evidence to overcome summary judgment, and its breach of contract claim against CU is **DISMISSED WITH PREJUDICE**. As such, the Court will not conduct a conflict of laws analysis, as it is unnecessary. Therefore, CU's Motion for Partial Summary Judgment Regarding No Contract (Record Document 143) is **DENIED AS MOOT**.

**VI. Motions for Partial Summary Judgment: Alleged Interest Rate Damages & Alleged Construction Cost Damages (Record Documents 140 & 145).**

(a) Summary of the Arguments.

First, CU seeks partial summary judgment against SIG for its alleged failure to satisfy its burden of proof regarding its claim for economic loss related to disparate interest rates. See Record Document 140-20 at 4. CU submits that even if SIG can prove its breach of contract claim, its claim for damages related to an alleged difference in interest rates still fails, as SIG cannot meet its burden of proof at trial. See id. at 9. Furthermore, CU argues that the evidence does not support SIG's speculative conclusion that it has suffered, or is reasonably certain to suffer, economic losses or damages related to disparate interest rates. See id. at 12.

CU points out that SIG has stated that the terms offered by the "SBA lender" were not accepted by SIG, meaning that it has not suffered any actual loss at this time. See id.

at 13. CU contends it is unclear how SIG will prove a claim for an actual loss that has not occurred. See id. Additionally, to the extent that SIG is claiming some future economic loss or damage related to disparate interest rates, CU maintains that such a claim remains unsupported by the evidence. See id. First, CU asserts that Hope never offered to lend SIG $3,000,000 for 30 years at zero percent interest. See id. Second, CU claims that no SBA lender ever offered to lend SIG any amount of money at any specific terms. See id. Third, CU avers that it is highly unlikely that any SBA lender would offer to loan SIG money unless SIG removed Alton from the organization. See id. Lastly, CU advances that SIG is not currently seeking funding for the project and does not know when it shall do so. See id.

Furthermore, CU argues SIG has failed to produce competent evidence sufficient to calculate the amount of the economic loss with reasonable certainty. See id. at 18. CU ultimately asserts that SIG's claim in their initial disclosure document for an amount of $4,916,000 in economic damages related to an 11.1% interest rate with a 30-year term does not appear to have any factual or rational relationship to the financials and conditions found in the documents from Hope and Celtic Bank that SIG has produced in support of its calculations. See id. at 19.

SIG opposed with a list of 12 undisputed material facts and an attached a list of exhibits. See Record Documents 185 & 189-1. CU replied, arguing that SIG has not filed a proper opposition under Local Rule 56.2. See Record Document 192 at 1. Additionally, CU submits that although SIG's opposition is not titled as such and does not meet the required formatting for a motion to continue, any implied request for a continuance should be denied. See id. at 2. CU avers that SIG has failed to provide the Court with any specific

reason to believe that any amount of additional time will produce evidence that will influence the outcome of this Motion. See id. at 3.

Furthermore, CU maintains that SIG has never received a written commitment from any bank guaranteeing any specific interest rate for a loan in any certain amount to build its proposed grocery store. See id. at 4. CU also claims that SIG has not proven the likelihood of its ability to secure such a loan from any lender at some future point. See id. Moreover, CU contends that SIG's false and misleading accusations against it are easily disproven and do not support SIG's implied request for additional time. See id. CU disputes SIG's assertions that it has filed frivolous and harassing motions and has withheld evidence until after the passing of the discovery deadline. See id.

Second, CU moves for partial summary judgment for SIG's failure to satisfy its burden of proof regarding the claim of economic loss due to increased construction costs. See Record Document 145 at 1. CU contends that the evidence directly contradicts the speculative conclusion that Hope would have approved SIG's loan but for some alleged breach by CU. See Record Document 145-19 at 8. CU advances that the only evidence SIG has produced to support the theory that it and the grocery store project were qualified for the loan is its own subjective beliefs. See id. at 9.

CU points to the following pieces of evidence to support its arguments: at least seven lenders other than Hope declined the opportunity to fund SIG's project; SIG's own market analysts could not say with any certainty that the project was even viable; and the team members of Hope made their concerns very clear to SIG throughout the process. See id. at 12. Additionally, CU submits that the evidence indicates that Hope's lending team had lost faith in the ability of SIG's members to succeed in the venture by the time

Hope declined SIG's loan application. See id. CU submits that none of these facts support the speculative conclusion that Hope would have approved SIG's loan application if CU had not allegedly breached the purported contract. See id.

Furthermore, CU argues the evidence does not support the speculative conclusion that SIG has sustained, or is reasonably certain to sustain, economic losses or damages related to disparate construction costs. See id. Because SIG has acknowledged that the grocery store project is currently on hold, and SIG is not currently pursuing financing, CU contends there cannot be any reasonable certainty of the occurrence of a future loss regarding an increase in construction costs for a project that may never be constructed. See id. at 12–13. Given the absence of any evidence to support this aspect of SIG's claim for damages, CU avers its claim related to an increase in construction costs must be dismissed. See id. at 13.

SIG opposed with the previously mentioned omnibus opposition which lists sixteen statements of uncontested material facts. See Record Document 184. SIG asserts sixteen "Statement[s] of Undisputed Facts and Relevant Procedural History." See id. at 1–4. SIG submitted a manual attachment of two recorded meetings and transcripts to support its opposition. See Record Document 186.

CU replied, arguing that SIG's only response to this Motion appears to be that it will produce the numbers and evidence at the time of trial. See Record Document 193 at 8. CU submits that SIG has not named any expert who would be able to produce or present such evidence, and no report related to calculating these theoretical cost increases has been provided. See id. CU advances that SIG has not presented a substantive opposition to this Motion. See id.

(b) Analysis.

"Under Louisiana law, economic losses such as lost profits must be proved with reasonable certainty and cannot be based on speculation or conjecture." Donaldsonville Glass and Body Works, Inc. v. City of Gonzales, No. 22-cv-817, 2024 WL 4580883, at *3 (M.D. La. Oct. 25, 2024). "There is no bright line test for what constitutes proof by a reasonable certainty." Id. Even so, "'mere estimate[s] of [plaintiff's] loss will not support a claim for lost profits.'" Id.

In the instant case, SIG claims it has suffered economic losses and vaguely demands $8,000,000.00. See Record Document 25 at ¶ 30. The two Motions at issue contemplate the disparate interest rates and construction costs. See Record Documents 140 & 145. SIG's Amended Rule 26 Disclosure claims it suffered economic damages that included $4,916,000.00 in interest payments. See Record Document 140-20 at 5. SIG argues this amount is calculated from an SBA interest rate of 11.1% that would need to be paid on a base loan of $3,000,000 over the course of 30 years, whereas SIG's loan with Hope was at zero percent interest. See id.

Additionally, SIG's Amended Disclosure provides that the amount for increase in materials and labor has yet to be determined. See Record Document 145-2 at 3. The base amount for construction has been previously submitted, and a new construction bid has not been prepared to determined current or future costs. See id. SIG has submitted various construction costs, including compilations from BBA Construction and Bradcourt Construction, which provide different estimates. See Record Document 148-27.

In its opposition, counsel for SIG explained that she cannot adequately oppose these Motions because of CU's alleged failures to produce competent discovery. See Record Documents 185, 189. With respect to SIG's first set of interrogatories, requests for production, and requests for admission, the Court finds that CU responded adequately in a timely fashion. See Record Document 192-1 at 2; see also Record Document 192-2 at 2. CU also timely responded to SIG's interrogatories on January 16, 2025. See Record Document 192-6 at 2; see also Record Document 192-7. Furthermore, CU offered to schedule a LR 37.1 conference to handle discovery issues; however, SIG did not request such conference. See id.

SIG's counsel had ample opportunity to file a motion to compel or to seek further discovery at the appropriate time if needed; however, no such relief was ever requested. SIG's counsel was also given the chance to review all the necessary initial disclosure documents to adequately oppose this Motion. See Record Document 192-12 at 2. At this late stage, SIG's belated complaints regarding alleged deficiencies in discovery are not before the Court. Instead, the record before the Court evidences that SIG failed to properly oppose these Motions under the Court's local rules and the Federal Rules of Civil Procedure. SIG has not sufficiently opposed these Motions because it fails to offer any facts or evidence from the summary judgment record that supports its arguments.

Additionally, the Court finds that CU has presented sufficient evidence demonstrating no genuine issues of material fact that SIG cannot prevail on its economic loss claim relating to disparate interest rates and construction costs. With respect to interest rates, Dents testified and confirmed that the zero percent interest was neither a guarantee nor a commitment. See Record Document 148-32 at 40. Additionally, Wells

testified that SIG's business plan included language indicating that it expected to pay interest on the loan. <u>See id.</u> at 43–44. In fact, Alton testified that SIG's initial disclosure is the only document it has relaying a base rate of zero percent interest. <u>See</u> Record Document 148-27 at 42. He confirmed that SIG never discussed different interest rates with anyone at Hope. <u>See id.</u> at 42–43. Moreover, SIG never received any type of offer from Hope agreeing to finance its loan at a zero percent interest rate. <u>See id.</u> at 47, 48.

The only documentary evidence SIG has presented to support its claim of damages in relation to disparate interest rates is the letter of interest from Hope and the nonbinding term sheet from Celtic Bank ("Celtic"). <u>See id.</u> at 57; <u>see also</u> Record Document 148-28 at 11. Alton testified that Hope never provided SIG with any written offer to finance the loan at zero percent interest. <u>See</u> Record Document 148-27 at 60 – 61. Moreover, Kathy Saloy ("Saloy"), former Hope Senior Vice President of Community and Economic Development, provided deposition testimony that supports CU's argument that Hope never guaranteed any particular interest rate. <u>See</u> Record Document 148-31 at 6, 38.

With respect to construction costs, Danielle Ware ("Ware"), Hope's Senior Vice President of Commercial Lending, expressed her concerns with SIG's construction cost numbers because Hope had received multiple variations of the budget, which did not align or allocate for traditional expenses and costs associated with construction. <u>See</u> Record Document 148-30 at 24–25. Mcdonough also expressed these same concerns with the construction costs. <u>See</u> Record Document 148-33 at 19–20. Mcdonough testified that SIG's construction estimates were significantly lower than construction estimates for

similarly sized buildings. <u>See id.</u> at 34–35. These concerns, among others, were one of the reasons why Hope suggested obtaining a consultant such as CU. <u>See id.</u> at 37, 38.

SIG argues its "construction damages will be proven at trial utilizing the difference in the bid presented and the current economic situation with highly increased tariffs compared to the time of applying for the loan." Record Document 184 at 3. Besides this bald assertion, SIG presents nothing that points to the amount of economic loss or damage it has suffered due to construction costs. SIG has not established any connection between its claims and the evidence contained within the summary judgment record. Rather than identifying how much it seeks in construction costs, SIG leaves the determination of this issue for trial. This approach is problematic at the summary judgment stage, as the Court must presently decide whether there are genuine issues of material fact to be resolved at trial.

Without more factual and evidentiary support, SIG cannot overcome summary judgment. It is not the duty of this Court to sift through the summary judgment record to find the evidence that supports SIG's arguments. Without any direction from SIG, the Court finds that its requested economic losses or damages due to disparate interest rates and construction costs are based purely on conjecture and speculation. The Court is unpersuaded that the uncorroborated statements by SIG's members and counsel, alone, are sufficient to prove economic losses or damages to a degree of reasonable certainty. <u>See</u> <u>Donaldsonville Glass</u>, 2024 WL 4580883, at *4. Counsel's arguments about discovery are meritless, as ample time and opportunity was given to counsel to ask for additional discovery, discuss and resolve any discovery issues, and review the relevant discovery materials provided to SIG. Therefore, CU's Motions for Partial Summary

Judgment (Record Documents 140 & 145) are **GRANTED**. SIG may not collect economic losses or damages based on disparate interest rates or construction costs from CU.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the following motions filed by CU are **GRANTED**: Motion for Partial Summary Judgment Regarding Affirmative Defenses (Record Document 137); Motion for Summary Judgment on Breach of Contract (Record Document 139); Motion for Partial Summary Judgment on Alleged Interest Rates (Record Document 140); and Motion for Partial Summary Judgment on Alleged Construction Cost Damages (Record Document 145).

**IT IS FURTHER ORDERED** that CU's Motion for Partial Summary Judgment Regarding No Contract (Record Document 143) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that all of SIG's claims asserted against CU are **DISMISSED WITH PREJUDICE**. SIG may not collect economic losses or damages relating to disparate interest rates or construction costs from CU.

An Order consistent with this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 29th of May, 2025.

UNITED STATES DISTRICT COURT JUDGE