**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| SIXELA INVESTMENT GROUP | CIVIL ACTION NO. 23-0277 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| HOPE FEDERAL CREDIT UNION, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court are two motions by Defendant and Plaintiff-in-Counterclaim Communities Unlimited, Inc. ("CU") requesting attorneys' fees from Plaintiff and Defendant-in-Counterclaim SIXELA Investment Group, LLC ("SIG"). See Record Documents 254 & 256. CU has brought a Motion to Consider Fee Application (Record Document 254) and a Motion for Fee-Shifting Sanctions (Record Document 256). SIG has opposed both motions. See Record Documents 263 & 264. CU replied to both of SIG's oppositions. See Record Documents 265 & 266. Because both motions request the same relief and raise issues that are inextricably intertwined, the Court will address both motions in this ruling. For the reasons stated below, CU's Motion to Consider Fee Application is **GRANTED IN PART and DENIED IN PART**. Additionally, CU's Motion for Fee-Shifting Sanctions is **GRANTED IN PART and DENIED IN PART**.

**BACKGROUND**

A full recitation of the pertinent facts can be found in this Court's previous Memorandum Rulings. See Record Documents 201 & 203. However, the Court will briefly address some background particularly important to the pending motions. SIG brought a breach of contract claim against CU based on its alleged failure to provide accurate and complete projections to Hope Federal Credit Union ("Hope"). See Record Document 25

at ¶ 18. At some point, SIG alleged that CU had breached its "Scope of Services" memorandum by not meeting with SIG. See Record Documents 240 at 7 & 237-1 at 17. CU asserted a counterclaim against SIG for fraud. See Record Document 37.

Within the course of the litigation, SIG filed 12 Motions for Extension of Time. See Record Documents 68, 91, 106, 115, 117, 163, 171, 175, 179, 213, 258 & 259. Additionally, SIG filed two deficient *pro se* Motions for Mistrial. See Record Documents 237 & 242. The record indicates a poor relationship between SIG and its prior counsel, Carolyn Dean ("Dean"), as evidenced by email exhibits attached to the Motions for Mistrial (Record Documents 237-1 & 242-2), the four Motions to Withdraw by Dean (Record Documents 211, 228, 233, & 241), and the two deficient *pro se* Motions for Mistrial based on Dean's alleged "prejudicial behavior" (Record Documents 237 & 242). Additionally, the email exhibits indicate that Dean was attempting to withdraw because the discovery process revealed that the facts provided to her by SIG that formed the foundation of the lawsuit were false. See Record Documents 237-1 & 242-2. The falsity of SIG's allegations is further evidenced by email exhibits attached to a filing by CU. See Record Documents 240-3 & 240-4.

Eventually, the Court granted summary judgment in favor of CU on all of SIG's claims. See Record Document 203. The Court granted a default judgment against SIG on CU's counterclaim as a sanction. See Record Document 247. The Court granted Dean's Fourth Motion to Withdrawal, and Douglas Lee Harville enrolled as new counsel for SIG. See Record Documents 248 & 251. SIG filed a Notice of Appeal regarding the grant of summary judgment in CU's favor. See Record Document 250. Now, CU has filed two motions for attorneys' fees: a Motion for Fee-Shifting Sanctions (Record Document

256) and a Motion to Consider Fee Application (Record Document 254). SIG has opposed both motions. See Record Documents 263 & 264. CU replied to both of SIG's oppositions. See Record Documents 265 & 266.

**LAW & ANALYSIS**

I.     **Summary of the Arguments**

In its Motion to Consider Fee Application, CU argues that it has a statutory right to attorneys' fees under La. Civ. Code art. 1958. See Record Document 254. CU obtained a default judgment on its counterclaim against SIG, in which it alleged fraud under Louisiana law. See Record Document 247. Although CU used fraud as an affirmative defense in its capacity as a defendant, it only requested rescission based on fraud in the counterclaim. Nevertheless, CU argues that it should recover all attorneys' fees because the prosecution of the counterclaim and the defense of the main claims are so intertwined that segregation of fees would be improper. See Record Document 254-1 at 10.

In response to CU's argument, SIG maintains that Article 1958 should not apply at all because CU argued in a prior Motion for Summary Judgment that there was no contract because Arkansas law should be applied.[1] See Record Document 263 at 1–3. SIG contends that CU should not be allowed to claim that no contract exists under Arkansas law but then avail itself of an entitlement to attorneys' fees under Louisiana law. See id. at 3. SIG also argues that even if attorneys' fees are granted under La. C.C. art. 1958, the only fees granted should be those accrued in relation to its counterclaim. See

---

[1] In its Motion for Summary Judgment as a defendant to the main claims, CU argued that Arkansas law should be applied. See Record Document 143 at 1. CU argued that if Arkansas law were applied, there would be no contract due to a lack of consideration. See id. Thus, there would be no contract upon which SIG's breach of contract claim could be based. See id. However, the Court denied this Motion for Summary Judgment as moot because the claims were dismissed on other grounds. See Record Document 203.

3

Record Document 263 at 6. CU responds to this argument by stating that it is allowed to argue in the alternative, even if those arguments are inconsistent with each other. See Record Document 265 at 2–4.

In its Motion for Fee-Shifting Sanctions, CU argues that the Court should grant CU attorneys' fees as a sanction against SIG for its bad faith misconduct in the litigation. See Record Document 256 at 4–8. CU argues that SIG perpetuated a fraud on the Court by relying on facts it knew to be false to support its breach of contract claim against CU. See id. CU lists many other factual allegations regarding SIG's bad faith, which are addressed in more detail below. See id. at 6–8.

In response, SIG contends that CU has not shown with sufficient specificity which attorneys' fees it is claiming. See Record Document 264 at 2. Additionally, SIG indicates that the misconduct is attributable to prior counsel rather than the SIG members. See id. In response to SIG's arguments, CU clarifies that this Motion is based on the conduct of SIG members, not its prior counsel. See Record Document 266 at 5. Additionally, CU lists the misconduct attributable to SIG members with specificity. See id. at 7–8.

**II.   Analysis**

a. Jurisdiction

The Court previously granted summary judgment in favor of CU on all claims asserted by SIG, thereby disposing of SIG's claims in their entirety. See Record Document 204. The only remaining cause of action was CU's counterclaim, on which the Court subsequently entered a default judgment in CU's favor. See Record Document 247. SIG has since filed a notice of appeal from those rulings. See Record Document 250. Nevertheless, this Court retains jurisdiction to consider CU's motions for attorneys' fees

4

and sanctions. See Record Documents 254 & 256. Issues relating to attorneys' fees and sanctions are collateral to the merits of the underlying action, and thus the filing of a notice of appeal does not divest the district court of jurisdiction to resolve them. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395–96 (1990) (holding that Rule 11 sanctions are a collateral issue over which the district court retains jurisdiction while the merits are on appeal). Accordingly, the Court has jurisdiction to adjudicate the pending motions notwithstanding SIG's appeal.

    b. Governing Law

CU argues that the Court should shift its attorneys' fees to SIG under La. Civ. Code art. 1958, which states that "[t]he party against whom rescission is granted because of fraud is liable for damages and attorney fees." CU's argument is premised on the notion that it could recover attorneys' fees if it were successful in asserting fraud as a basis for rescission.

SIG counters that Arkansas law should govern the issue of attorneys' fees, relying on CU's prior argument in one of its Motions for Summary Judgment that Arkansas law should apply. See Record Documents 143 & 263 at 1–3. That Motion for Summary Judgment was filed by CU in its capacity as a defendant, not as a plaintiff-in-counterclaim, and was ultimately denied as moot by this Court. See Record Documents 143 & 204. SIG contends that CU cannot now selectively invoke Louisiana law to support a claim for attorneys' fees. See Record Document 263 at 3.

The Court recognizes that state substantive law governs the award of attorneys' fees under statutory authority. Because this case arises under diversity jurisdiction, the Erie doctrine is applicable. See 28 U.S.C. § 1332; see Erie R. Co. v. Tompkins, 304 U.S.

5

64 (1938). Under Erie, federal procedural law and state substantive law apply in a diversity action. See id. To determine which state's substantive law applies, the Court applies the choice of law rules of the forum state, which is Louisiana. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

Although the Court acknowledges SIG's choice of law argument, the Court finds Louisiana law governs this dispute. First, Louisiana's conflict rules explain that the court should apply the law of the state "whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3515. Where, as here, the alleged misconduct was perpetrated upon a Louisiana tribunal, Louisiana's strong public policy in safeguarding the integrity and efficiency of its judicial process would be "most seriously impaired" by the application of another state's law. Id.

Second, from the outset, SIG pleaded Louisiana law, advanced arguments under Louisiana law, and litigated on the assumption that Louisiana law applied. The parties have effectively consented to that framework. See Record Document 203 at 3–4. SIG now argues that Arkansas law applies only after CU raised the issue of attorneys' fees. See Record Document 263 at 1–2. Although SIG argues that CU should not be permitted to select which law to apply at different points in the litigation to its own benefit, that is precisely what SIG is attempting to do here. See id. SIG cannot now pick and choose between Louisiana and Arkansas law opportunistically to avoid potential consequences under Louisiana law. The Court will not allow selective application of the law. Because the parties consented to Louisiana law on most issues and all past rulings in this case applied Louisiana law, Louisiana law also applies to the issue of attorneys' fees as well.

6

Parenthetically, the Court notes that under Arkansas law, a contract requires consideration, and here there was none; therefore, SIG would have no viable breach of contract claim under Arkansas law. Were the Court to accept SIG's belated, untimely argument that Arkansas law governs, SIG would have effectively wasted the Court's and CU's time and resources litigating this case for approximately two years while knowing its claim would fail under Arkansas law. Accordingly, the Court makes clear that even if Arkansas law were applied and statutory attorneys' fees were unavailable, the Court would still award the overall same total in attorneys' fees pursuant to its inherent authority to sanction a party for litigating in bad faith. See supra Part II(d).

   c. La. Civ. Code art. 1958

Louisiana Civil Code article 1958 allows a party obtaining rescission of a contract based on fraud to recover attorneys' fees. CU argues that Article 1958 applies to its counterclaim because it sought rescission based on fraud. See Record Document 254-1 at 3. However, the Court did not grant rescission due to fraud; rather, the Court granted a default judgment against SIG as a sanction. See Record Document 245. Thus, the Court must determine 1) whether SIG engaged in fraudulent conduct and 2) whether Article 1958 applies even though the Court did not grant rescission based on fraud.

Under La. Civ. Code art. 1953, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." According to La. Civ. Code art. 1957, fraud must be proven only by a preponderance of the evidence and may be established by circumstantial evidence.

According to CU's counterclaim, SIG member Alton Alexis ("Alexis") submitted a "Personal Financial Statement" to Hope as part of the loan application process. See Record Document 37 at 7. In the Personal Financial Statement, Alexis did not answer the question of whether he had ever declared bankruptcy or had any judgment recorded against him. See id. Alexis in fact had prior bankruptcy proceedings and a criminal conviction. See id. at 7–9. Due to those material omissions and CU's unawareness of Alexis's history, SIG fraudulently obtained the benefit of being considered for a commercial loan. See id. at 10. The record establishes that all of the above facts as true. See Record Documents 37-1 through 37-7. Based on the record, the Court finds that fraud has been proven by a preponderance of the evidence. It is clear that in SIG's attempt to obtain a commercial loan from Hope, Alexis misrepresented his bankruptcy and criminal history.

Now that the Court has determined that fraud has been proven, the Court must determine whether La. Civ. Code art. 1958 applies to CU's request for attorneys' fees despite the court not actually granting rescission based on fraud in its counterclaim. Louisiana jurisprudence makes clear that attorneys' fees are available under Article 1958 where fraud is proven, even if rescission is not the remedy actually granted. The Louisiana Supreme Court in Stutts v. Melton held that a plaintiff may recover attorneys' fees under Article 1958 based on a finding of fraud, notwithstanding the fact that rescission of the contract was not sought. 130 So. 3d 808, 814–15 (La. 2013). The court emphasized that Article 1958 is intended to punish fraudulent conduct, and that the remedy of attorneys' fees does not depend on whether rescission or damages are awarded. See id. Similarly, in Pan American Life Insurance Company v. Louisiana Acquisitions Corporation, the court

8

awarded attorney's fees to defendants under Article 1958 despite their not having requested rescission, reasoning that the plaintiffs' fraudulent conduct was sufficient to trigger the statute. 2020 WL 68612, at *3–6 (E.D. La., 2020).

Louisiana courts have cautioned that attorneys' fee statutes must be strictly construed because they are penal in nature. See Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc., 449 So. 2d 1014, 1015–16 (La. 1984). However, Stutts recognized that Article 1958 represents a legislative judgment that fraud warrants the exceptional remedy of fee-shifting. 130 So. 3d at 814–15. The court stated that "the intent of the legislation providing attorney fees when the obligor has committed fraud is to punish the fraudulent conduct, regardless of whether the obligee seeks rescission of the contract." See id. at 815.

Consistent with Stutts and Pan Am., the Court finds that a default judgment entered as a sanction does not alter the underlying substantive finding of fraud, which remains sufficient to trigger Article 1958. 130 So. 3d at 814–15; 2020 WL 68612, at *3–6. Accordingly, the Court concludes that CU is entitled to attorneys' fees under Article 1958 on its counterclaim, notwithstanding the fact that rescission was not expressly ordered.

CU also argues that it should be entitled to attorneys' fees for its defense of SIG's claims because it brought an affirmative defense based on fraud. See Record Documents 30 & 265 at 5. Further, CU contends that its counterclaim of fraud and its defense of fraud are inextricably intertwined, where it would be improper, if not impossible, for the Court to segregate the attorneys' fees. See Record Document 265 at 5. In response, SIG argues that if any attorneys' fees are awarded, the fees should be limited to those accrued by work on the counterclaim only. See Record Document 263 at 3.

SIG's contention that any award of attorney's fees should be limited solely to CU's counterclaim for fraudulent inducement is unpersuasive. Both CU's defense against SIG's breach of contract claim and CU's counterclaim are grounded in the same operative factual allegations: that SIG fraudulently induced CU to enter into a consulting contract. The work performed by CU's counsel was directed toward developing evidence of this fraudulent inducement, regardless of whether that evidence would be used defensively, offensively, or for both purposes.

The Fifth Circuit has made clear that "[a] court need not segregate fees when the facts and issues are so closely interwoven" that "the time spent on separate claims … in the same litigation cannot reasonably be divided." Mota v. Univ. of Tex., 261 F.3d 512, 528 (5th Cir. 2001) (citing Abell v. Potomac Ins. Co., 946 F.2d 1160, 1169 (5th Cir. 1991)). Here, CU's affirmative defense of fraud and counterclaim arise from a common core of facts and are based on the same legal theory. The work performed in litigating these cannot be disentangled without engaging in hyper-technical accounting.

The Court must also consider the fact that CU asserted seven affirmative defenses against SIG, but La. Civ. Code art. 1958 would only apply to the fraud defense. The United States Supreme Court in Hensley v. Eckerhart stated, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." 461 U.S. 424, 435 (1983). Thus, although some time was expended by CU's counsel working on defenses that do not have a statutory basis for attorneys' fees, the Court will not attempt a mathematical determination of which hours would be covered under La. Civ. Code art. 1958 and which ones would not be. Additionally, the Court

recognizes that in Hensley the claim for attorneys' fees was based on 42 U.S.C. § 1988 rather than La. Civ. Code art. 1958. 461 U.S. at 435. However, the Hensley Court's finding that a mathematical accounting by the district court was unnecessary and its discussion regarding how a court should determine a fee reduction is applicable. See id. at 435–437, 435 n. 11.

Accordingly, the Court concludes that CU is entitled to recover its reasonable attorney's fees incurred in connection with both its defenses and counterclaim. The total amount of attorneys' fees awarded will be discussed at the end of this ruling by taking into consideration both the statutory right to attorneys' fees under La. Civ. Code art. 1958 and attorneys' fees awarded as sanctions.

  d. Fee Sanctions

The general rule for attorneys' fees is known as the "American Rule." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975)). The well-established "American Rule" states that "absent statute or enforceable contract, litigants pay their own attorneys' fees." Id. at 257. Thus, the prevailing litigant is not usually entitled to collect attorneys' fees from the losing party. However, there are several exceptions to this general rule where the court can impose attorneys' fees based on its inherent power. First, the "common fund exception" allows a court to impose attorney fees based on "its historic equity jurisdiction …, and allows a court to award attorney's fees to a party whose litigation efforts directly benefit others." Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991) (internal citation omitted). Second, a court can impose attorneys' fees as a sanction for willfully disobeying court orders. See id. Third, a court may impose attorneys' fees as a sanction

11

for those who act in "bad faith, vexatiously, wantonly, or for oppressive reasons." Id. at 45–46.

Because CU seeks an award of attorneys' fees based on SIG's bad faith, the Court considers the request under that framework. See Record Document 256 at 3. The Court in Chambers notes that a court's inherent authority to impose attorneys' fees for bad faith misconduct should be exercised with caution. See 501 U.S. at 50. However, the Court does clearly state that when there is no authority by statute or the Rules for the granting of attorneys' fees, a court may safely rely on its inherent power. See id.

In support of its argument that this Court should grant attorneys' fees as sanctions, CU states that SIG attempted to defraud the court. See Record Document 266 at 7. Specifically, CU asserts that SIG's misconduct includes:

> asserting additional claims and defenses that the members knew to be unsupported or contradicted; denying factual allegations by CU that SIG knew to be true; lying to their own attorney about unsupported claims or defenses; attempting to bully their attorney into proceeding with their scheme to defraud the Court (including the threat of a malpractice suit if the attorney withdrew and even warning that she would "burn in hell"), ignoring a motion to compel by withholding evidence until after the passing of all relevant deadlines; refusing to communicate and cooperate with their counsel; engaging in bad faith conduct during settlement negotiations, including the reneging on a settlement offer to CU after CU accepted said offer; filing a *pro se* motion when they were aware they had no right to proceed in a *pro se* capacity; filing a second *pro se* motion even after the Court rejected the first as being deficient, and all with the ultimate goal of defrauding the Court.

See id. at 7–8 (internal citations omitted).

In Chambers, the Supreme Court stated:

> The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.

501 U.S. at 46. Thus, the court should only issue sanctions under its inherent power when there is bad faith conduct during litigation and that conduct has impacted the proceedings in a way that the court finds sanctions appropriate. Courts have held that sanctions under a court's inherent power should not be issued when the conduct in question is the same conduct which forms the basis for the underlying claim or involves pre-litigation conduct. See Hillman Lumber Products, Inc. v. Webster Mfg., Inc., 727 F.Supp.2d 503, 509–10 (W.D.La., 2010). Additionally, sanctions through a court's inherent power can be made against an attorney, a party, or both. See id.

In this case, the record, as well as SIG's failure to deny that it engaged in bad faith misconduct, clearly shows the Court that there was bad faith misconduct. Additionally, all of the misconduct outlined by CU concerns conduct that occurred during litigation. In fact, CU's primary argument for sanctions is that SIG's entire lawsuit, as well as its defenses asserted to CU's counterclaim, were based on misrepresentations of fact and an attempt to defraud the Court. See Record Document 266 at 7–8.

This Court has devoted ample time and resources to this matter and finds sanctions justified under its inherent power as a punishment for abusing the judicial process. As the Supreme Court in Chambers expressed, a court's inherent power to sanction should be used cautiously, and the court must find "that fraud has been practiced upon it, or that the very temple of justice has been defiled." 501 U.S. at 46. Here, the Court finds that this standard is met.

> Under Fifth Circuit precedent,
>
> before a Court invokes its inherent power to sanction, the Court must make sufficiently specific factual findings in the record that an offender has committed misconduct in bad faith or in willful violation of a court order,

established by clear and convincing evidence, and then impose only those sanctions that are the least severe necessary under the circumstances.

Hollybrook Cottonseed Processing, LLC v. Carver, Inc., 2012 WL 12929817, at *16 (W.D.La., 2012) (citing Crowe v. Smith, 261 F.3d 558, 563-66 (5th Cir. 2001)). SIG's misconduct throughout the litigation is evident from the record. First, SIG failed to comply with numerous court-ordered deadlines throughout the litigation despite the Court warning SIG about the imposition of sanctions. See Record Document 245 at 6. The Court has imposed sanctions previously in this suit by striking untimely pretrial filings and entering a default judgment against SIG "because 'there is a clear record of delay or contumacious conduct.'" See id. (citing Voyles v. Superior Staffing, LLC, No. 18-01410, 2023 WL 6320295, at *5 (W.D. La. Sept. 27, 2023)). Throughout this litigation, the SIG members have been uncooperative, deceitful to the Court and its own attorney, and noncommunicative. See Record Document 245 at 6. SIG's actions have prejudiced CU by forcing it to incur unnecessary attorneys' fees and costs.

Additionally, the SIG members are primarily responsible for the misconduct during litigation. First, SIG filed two deficient *pro se* Motions for Mistrial. See Record Documents 237 & 242. SIG could not file any *pro se* motion, as it was required to file all motions through its enrolled counsel. Attached to these motions were emails by Dean, SIG's prior counsel, to the SIG members. See Record Documents 237-1 at 1–28 & 242-2 at 1–53.[2]

---

[2] The Court notes that these emails are exhibits to *pro se* Motions for Mistrial that were stricken from the record due to being procedurally deficient. See Record Document 244. The Court finds that it is appropriate to use these emails in its ruling for several reasons. First, SIG voluntarily relinquished these emails in its Motions. See Record Documents 237-1 & 242-2. Second, the Motions were stricken for a procedural deficiency unrelated to the emails. See Record Document 244. Third, opposing counsel has referenced these emails in prior filings without objection from SIG. See Record Document 256. Fourth, this Court has referenced these emails in a prior ruling without objection from SIG. See Record Document 245. Thus, the Court finds that SIG has essentially waived any objection to admissibility of these emails.

14

> One email from Dean to SIG members states,
>
> FYI,
>
> There is no breach of contract case to pursue. Prior to now, it was based on CU not providing projections and not holding the conference with all parties after the withdrawal of the consultant.
>
> 1. SIG received the projections as they used them to apply for a loan with Meza (in discovery emails submitted late) (False information was provided to attorney saying SIG did not receive spreadsheets.)
>
> 2. A conference call was held to discuss moving on and another consulting firm was recommended in LA. (False information provided to attorney saying no meeting was held)

See Record Document 237-1 at 17. This email indicates that SIG lied to its own counsel and that the basis of the lawsuit was false. Another email from Dean states that she refuses to defend SIG's case as it was based on fraudulent activity and she could lose her law license through attempting to defend it. See id. at 18. An email from Alexis to Dean says, "… god do not like liars and you will burn in hell for these lies." See id. at 15. Another email from Alexis threatens Dean with a malpractice suit. See id. at 19. The emails referenced above, along with the many other emails attached to the Motions for Mistrial show that the SIG members and Dean had a tumultuous relationship based on SIG's urging Dean to defraud the Court on its behalf. According to Chambers, practicing a fraud upon the court is one of the justifications for sanctions, which is applicable here. 501 U.S. at 46. Additionally, the Court finds that the record provides clear and convincing evidence of this fraud practiced on the Court.[3]

---

[3] SIG's breach of contract claim against CU stated that CU failed to provide complete projections to SIG and failed to have a meeting with SIG. However, exhibits in the record show emails between SIG members, Larry Dents (Hope employee), and Brian Wells (CU employee) stating that 1) CU did have a conference with SIG and 2) projections were provided to SIG members. See Record Documents 240-3 & 240-4.

In addition to SIG's attempted fraud on the Court, SIG also caused numerous delays in the litigation and forced the Court and opposing counsel to make unnecessary rulings and filings. In total, SIG filed 12 Motions for Extension of Time. See Record Documents 68, 91, 106, 115, 117, 163, 171, 175, 179, 213, 258 & 259. This created delays in the litigation and required CU to file several oppositions and the Court to issue several rulings. After reviewing the emails attached to the Motions for Mistrial, it seems that many of these Motions for Extension of Time were filed because SIG was uncooperative and noncommunicative with its counsel. See Record Document 237-1.

Based on the conduct outlined above as well as the misconduct clearly indicated from the entirety of the record, this Court finds the imposition of attorneys' fees as sanctions appropriate in this matter. The total amount of attorneys' fees awarded will be discussed below by taking into consideration both the statutory right to attorneys' fees under La. Civ. Code art. 1958 and attorneys' fees awarded as sanctions.

e. Award of Attorneys' Fees

The Court has determined that an award of attorneys' fees is appropriate under La. Civ. Code art. 1958 and under the Court's inherent authority to sanction a party for bad faith misconduct. The Court in Hensley provides some guidance as to how a court should determine an award of attorneys' fees. See 461 U.S. at 429–440. The Court explains that a court can use its discretion in light of certain considerations. See id. at 436–37. The considerations that the Court outlines are whether the hourly rate is reasonable and whether the number of hours billed is reasonable. See id. at 435–36.

Here, CU has submitted a total of 965.8 hours billed by counsel. See Record Document 254-1 at 9. The attorneys' rates are as follows: Attorney Kay B. Baxter charges

$330.00 per hour, Attorney Jay R. Boltin charges $275.00 an hour but only $137.50 an hour for travel, and Attorney Margaret A. Casey charges $275.00 per hour. As CU explained, in 1993, a court found that the "maximum rate" acceptable at that time for an experienced lawyer in New Orleans was $400. See id. at 11 (citing In re Shell Oil Refinery, 155 F.R.D. 552 (E.D.La., 1993)). Thus, a fee of $330.00 is surely reasonable thirty years later. This Court finds the rate at which CU's counsel billed was reasonable. However, regarding the number of hours billed, the Court cannot definitively determine whether 965.8 hours was reasonable as many of the explanations are redacted. See Record Document 254-5. However, based on the Court's knowledge of the record, it finds most of these hours are justified. See id. Any reduction based on the number of hours billed is considered in the Court's total award.

Of particular importance to the present dispute, the Hensley Court explained the method for calculating attorneys' fees when there are multiple claims and only some are successful. 461 U.S. at 434–37. The Court stated that when there are claims based on a "common core of facts" and counsel argues multiple related legal theories, the district court should not only consider the hours expended on the successful legal theories, but also the unsuccessful ones. See id. The Court explained,

> Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Id. at 435. Additionally, the Court expressed that district courts are not required to make a mathematically precise determination of attorneys' fees. See id. at 436–37. Rather, courts have "discretion" in making an "equitable judgment." See id. at 437.

17

The Court does recognize that some of the delays and issues that have arisen during litigation are attributable to factors and individuals other than SIG. Additionally, the Court recognizes that CU took an aggressive approach toward its defense of the main claims and counterclaim, which may have led to extra legal fees. Based on the Court's extensive review of the record, CU's entitlement to fees under La. Civ. Code art. 1958, SIG's bad faith misconduct, and any mitigating factors in favor of SIG, the Court finds that SIG is liable for 65% of CU's attorneys' fees in this matter. Of the $264,156.75 CU requested, the Court grants $171,701.40 in attorneys' fees.

## CONCLUSION

Based on the reasons explained above, the Motion to Consider Fee Application (Record Document 254) is **GRANTED IN PART and DENIED IN PART**. More specifically, the Court awards some attorneys' fees under La. Civ. Code art. 1958 but does not grant all relief requested. Additionally, CU's Motion for Fee-Shifting Sanctions (Record Document 256) is **GRANTED IN PART and DENIED IN PART**. The Court finds that the imposition of fee-shifting sanctions is appropriate in this matter but does not grant all relief requested.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 8th day of October, 2025.

                                                S. MAURICE HICKS, JR.
                                          UNITED STATES DISTRICT JUDGE